# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* ACTING DIRECTOR OF INSURANCE, JENNIFER HAMMER, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 16 C 7371 |
| v. | ) ) | Chief Judge Rubén Castillo |
| TWIN RIVERS INSURANCE COMPANY f/k/a CHEROKEE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Illinois Acting Director of Insurance Jennifer Hammer[1] ("Plaintiff") maintains this suit against Twin Rivers Insurance Company ("Defendant") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the federal Real Estate Settlement Procedures Act, arising out of a captive reinsurance arrangement involving Defendant and Triad Guaranty Insurance Corporation. (R. 37, First Am. Compl.) Defendant moves to dismiss Plaintiff's First Amended Complaint in all respects pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (R. 46, Mot.) For the reasons set forth below, the Court grants Defendant's motion.

---

[1] This suit previously named Anne Melissa Dowling, then Acting Director of the Illinois Department of Insurance, as Plaintiff. (R. 1, Notice of Removal.) Jennifer Hammer was subsequently appointed to that position effective January 17, 2017. (R. 47, Mem. at 1 n.1; R. 50, Resp. at 1 n.1.) She is therefore automatically substituted as the Plaintiff. *See* FED. R. CIV. P. 25(d).

# BACKGROUND

This case stems from a 2012 state court "rehabilitation" proceeding under the Illinois Insurance Code pertaining to the now-defunct Triad Guaranty Insurance Company ("Triad").[2] (R. 37, First Am. Compl. ¶ 3.) In December 2012, Plaintiff was appointed as Triad's "rehabilitator" and in that capacity was vested with authority to deal with the property, business, and affairs of Triad. (*Id.*; R. 37-1, Order of Rehabilitation at 3.[3]) Plaintiff also is authorized as rehabilitator to "bring any action, claim, suit or proceeding against any person with respect to that person's dealings with Triad." (R. 37-1, Order of Rehabilitation at 3-4.) This suit by the Plaintiff-rehabilitator deals with a contractual reinsurance arrangement between Triad and Defendant Twin Rivers.

Triad was in the business of selling private mortgage insurance ("PMI"), a type of insurance issued in connection with mortgages to protect lenders against nonpayment by borrowers. (R. 37, First Am. Compl. ¶ 4.) In September 2000, Triad entered into an "Excess of Loss Book Year Reinsurance Agreement No. 13" (the "Reinsurance Agreement") with Defendant, pursuant to which Defendant would reinsure certain PMI policies issued by Triad. (*Id.* ¶¶ 8-9.) Specifically, Defendant would reinsure PMI issued by Triad on mortgages originated by banks affiliated with Defendant. (*Id.* ¶¶ 9-10.) In the course of originating mortgages, banks affiliated with Defendant routinely referred some of their borrowers to Triad to obtain PMI. (*Id.* ¶¶ 10, 29.) In turn, pursuant to the Reinsurance Agreement, Defendant would reinsure those mortgages. (*Id.* ¶¶ 9-10.) This arrangement, common in the mortgage industry, is

---

[2] Unless otherwise noted, the Court recounts these allegations as averred in Plaintiff's First Amended Complaint (R. 37).

[3] In the context of this motion, the Court properly may consider the Order of Rehabilitation because it was attached to the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

known as "captive" reinsurance in that Defendant reinsured PMI only on loans originated by its affiliated banks. (*Id.* ¶¶ 7, 20.) In exchange for the reinsurance, Triad would pay a certain percentage of each referred borrower's PMI premiums to Defendant. (*Id.* ¶ 20.) These so-called "ceded" premiums were deposited into a trust account and invested and used to fund any payments due to Defendant under the Reinsurance Agreement. (*Id.* ¶¶ 12-13, 20.) On a periodic basis, Defendant would also receive dividends out of the trust account for the benefit of itself and its affiliated banks.[4] (*Id.* ¶ 37.) As of the filing of Plaintiff's original complaint, a balance of approximately $1,741,655 remained in the trust account. (*Id.* ¶ 37; R. 47, Mem. at 3 n.3; R. 50, Resp. at 2 & n.4.)

Plaintiff initiated this suit in Illinois state court on June 15, 2016. (R. 1-1, Compl. at Law; R. 1, Notice of Removal ¶ 2.) Defendant removed this suit to federal court in July 2016, invoking both federal-question and diversity jurisdiction.[5] (R. 1, Notice of Removal ¶¶ 2, 15.) On December 13, 2016, the Court granted a prior motion to dismiss filed by Defendant and dismissed Plaintiff's complaint without prejudice.[6] (R. 36, Min. Entry.) Plaintiff subsequently filed her First Amended Complaint on January 13, 2017. (R. 37.)

In Count I of her amended complaint, Plaintiff asserts a state law claim for breach of contract under Illinois law, alleging that Defendant failed to disclose to referred borrowers the benefits that Defendant derived from the captive reinsurance arrangement. (R. 37, First Am. Compl. ¶¶ 44-45.) Plaintiff alleges that pursuant to the Reinsurance Agreement, Defendant was

---

[4] For convenience, the Court will henceforth treat Defendant and its affiliated banks as one and the same, referring to them collectively as "Defendant."

[5] The Court satisfied itself that subject-matter jurisdiction existed. (R. 30, Order at 8 n.5.)

[6] During the December 13, 2016 status hearing addressing Defendant's prior motion to dismiss, counsel for Plaintiff explained that the parties were exploring possible resolution of the case. Counsel also explained that as a result, Plaintiff did not oppose granting the motion without prejudice, but requested 30 days to file an amended pleading.

required to give "each borrower whose loan is or may be subject to the Agreement, a disclosure as appropriate regulatory authorities may suggest or require" and that U.S. Department of Housing and Urban Development ("HUD") regulations require the disclosure of the benefits that Defendant was receiving through the captive reinsurance arrangement. (*Id.* ¶¶ 41, 43.) In other words, Plaintiff alleges that Defendant breached the Reinsurance Agreement by failing to provide certain disclosures to the borrowers whose PMI policies it would be reinsuring. (*See* R. 47, Mem. at 5.)

In Count II, Plaintiff asserts a claim under Illinois law that Defendant breached the implied covenant of good faith and fair dealing that exists in every contract by selectively referring only the highest-risk borrowers to Triad for PMI. (R. 37, First Am. Compl. ¶¶ 51-52.) Plaintiff alleges that Defendant "vetted its borrowers" and selectively referred only "the mortgages that presented the highest risk of default" to Triad and referred other, lower-risk mortgages to other PMI providers. (*Id.* ¶¶ 11, 51.) According to Plaintiff, this selective referral enabled Defendant to "minimize [its] risk of reinsuring loans that could go into default" while at the same time maximizing its profits. (*Id.* ¶ 52.) Plaintiff alleges that this selective referral was arbitrary, capricious, and inconsistent with Triad's reasonable expectations under the Reinsurance Agreement, and therefore violated the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 49, 53.)

In Count III, Plaintiff seeks a declaratory judgment that the reinsurance arrangement between Triad and Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. Plaintiff alleges that the ceded premiums were actually kickbacks paid in exchange for Defendant referring borrowers to Triad, which violated RESPA's prohibition on giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or

understanding . . . that business incident to or a part of a real estate settlement service . . . shall be referred to any person," 12 U.S.C. § 2607(a). (R. 37, First Am. Compl. ¶¶ 21, 24, 33-34, 62.) Plaintiff also alleges that the ceded premiums constituted a portion, split, or percentage of the PMI premiums and were either "not for services actually furnished or performed" by Defendant or "grossly exceeded . . . the value of any such services." (*Id.* ¶¶ 25, 32, 35-36.) As a result, Plaintiff alleges, the ceded premiums also violated RESPA's prohibition on giving or accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed," 12 U.S.C. § 2607(b). (R. 37, First Am. Compl. ¶¶ 25, 32, 35-36.) Plaintiff also seeks a declaratory judgment that any further payment of dividends from the trust account to Defendant violates RESPA and that the balance of the trust account is the property of Triad. (*Id.* ¶ 62.)

In Count IV, Plaintiff asserts a claim of unjust enrichment under Illinois law, alleging that the reinsurance premiums paid by Triad "grossly exceeded" the value of any reinsurance provided by Defendant. (*Id.* ¶ 64.) Plaintiff alleges that Defendant's retention of the approximately $1.7 million corpus of the trust account (into which Triad deposited the ceded reinsurance premiums) would "violate[] the fundamental principles of justice, equity, and good conscience" and would therefore constitute unjust enrichment. (*Id.* ¶ 66.)

Defendant now moves to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim. (R. 46, Mot.)

## LEGAL STANDARD

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon

which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation and internal alteration omitted). To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). In addition to the complaint itself, the Court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ANALYSIS

### I.       Breach of Contract (Count I)

As noted, Plaintiff alleges in Count I that Defendant breached the Reinsurance Agreement by failing to disclose to referred borrowers the benefits that it derived from the captive reinsurance arrangement. (R. 37, First Am. Compl. ¶¶ 44-45.) Plaintiff alleges that the Agreement required Defendant to provide any disclosures that regulatory authorities "may suggest or require" and that HUD regulations require the disclosure of the benefits that Defendant was receiving. (*Id.* ¶¶ 41, 43.)

Defendant contends that Plaintiff's breach of contract claim (Count I) must be dismissed for two principal reasons. First, Defendant argues that there is no plausible allegation of a breach

because the Agreement has no provisions requiring the disclosure to borrowers that Defendant allegedly failed to provide. (*Id.* at 6-8.) Second, Defendant argues that Plaintiff has not plausibly alleged any injury to Triad resulting from the alleged failure to provide such disclosure to borrowers. (*Id.* at 8.) The Court agrees with both of Defendant's arguments.

"To state a claim for breach of contract under Illinois law, a party must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (citation and internal quotation marks omitted). Defendant argues that the Reinsurance Agreement does not contain any provisions that obligated it to disclose the captive reinsurance arrangement with Triad to referred borrowers. (R. 47, Mem. at 6-8.) Defendant contends that Plaintiff has thus failed to plausibly allege a breach, a prerequisite to stating a breach of contract claim. (*Id.*) Plaintiff does not cite any provisions of the Reinsurance Agreement in her complaint, but does allege that "[p]ursuant to the Agreement . . . Twin Rivers and the Affiliated Banks were required to comply with all applicable laws and regulations including the requirement to disclose the dividends and the benefits it derived from the mortgage reinsurance premiums to the borrowers whose loan[s] w[ere] subject to the Agreement." (R. 37, First Am. Compl. ¶ 18.) Plaintiff expands on that allegation in her response by pointing to § 11.2(f) of the Reinsurance Agreement.[7] (R. 50, Resp. at 5-6.) In that provision, which is titled "No Conflict or Violation," Defendant warranted and represented that:

_____

[7] Plaintiff does not contend—and therefore waives the argument—that she can survive dismissal without citing particular contract provisions. *See Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) ("The law on the issue of whether it is necessary to cite specific contract provisions to state a claim for breach of contract is divided in this district.").

> The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby in accordance with the respective terms and conditions hereof will not . . . (b) violate any order, judgment, injunction, award or decree of any court, arbitrator or governmental or regulatory body against, or binding upon, or any agreement with, or condition imposed by, or consent required by, any governmental or regulatory body, foreign or domestic, binding upon [Twin Rivers].

(R. 37-2 at 25, Reinsurance Agmt. § 11.2(f).) Defendant contends that § 11.2(f) is merely a representation that, at the time of contracting, it was not specifically and individually subject to any legal constraints that would preclude it from agreeing to and fulfilling its obligations under the Reinsurance Agreement. (R. 47, Mem. at 7.) Plaintiff contends that this provision is much broader. She argues that it is a continuing commitment by Defendant to comply with all generally applicable statutes and regulations, so that a violation of any applicable statute or regulation also constitutes a breach under this provision. (R. 50, Resp. at 6.) According to Plaintiff, HUD regulations required Defendant to disclose the benefits it received under the captive reinsurance arrangement to borrowers that it referred to Triad for PMI. (*Id.*) By allegedly failing to comply with these HUD regulations, Plaintiff's theory goes, Defendant also breached § 11.2(f). Whether Plaintiff has plausibly alleged a breach of contract thus turns on the proper interpretation of this provision.

If the language of the Reinsurance Agreement is unambiguous, its interpretation "is a question of law that can be decided at the motion to dismiss stage." *Golden v. Wiznitzer*, No. 13 C 9003, 2014 WL 1329397, at *1 (N.D. Ill. Apr. 2, 2014) (citation omitted). If, on the other hand, it is ambiguous, interpretation is a question of fact which the Court cannot properly decide on a motion to dismiss. *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 228244, at *3 (N.D. Ill. Jan. 22, 2013). Thus, the "threshold inquiry is whether the contract is ambiguous." *Int'l Capital Grp., LLC v. Starrs*, No. 10 C 3257, 2011 WL 66027, at *3 (N.D. Ill. Jan. 10, 2011). A contract is ambiguous "only if the language used is reasonably or fairly

susceptible to having more than one meaning, even when considering the disputed language in the context of the entire agreement." *Id.* (citation and internal quotation marks omitted). But it is not rendered ambiguous "simply because the parties do not agree on the meaning of its terms." *Id.* (citation omitted). If the terms of the Reinsurance Agreement conflict with Plaintiff's characterizations or allegations, the terms of the instrument itself control. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

The Court concludes that the language of § 11.2(f) is fairly susceptible to Defendant's interpretation, but not Plaintiff's. It is therefore unambiguous and the Court can decide its meaning as a matter of law and without any need for extrinsic evidence. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1037 (7th Cir. 1998); *see also Citadel Grp. Ltd. v. Sky Lakes Med. Ctr., Inc.*, No. 06-C-6162, 2008 WL 1924958, at *4 (N.D. Ill. Apr. 30, 2008) ("If only one interpretation is reasonable, the contract is unambiguous and the court can interpret its meaning as a matter of law[.]"). In § 11.2(f), Defendant represented and warranted that executing the Reinsurance Agreement and performing its obligations thereunder would not (1) "violate any order, judgment, injunction, award or decree of any court, arbitrator or governmental or regulatory body against, or binding upon" it or (2) "violate . . . any agreement with, or condition imposed by, or consent required by, any governmental or regulatory body, foreign or domestic, binding upon" it. (R. 37-2 at 25, Reinsurance Agmt. § 11.2(f).) This language naturally reads as a representation that Defendant was not subject to any *specific and individual* legal constraints that precluded it from agreeing to and performing its contract obligations. The language is thus fairly susceptible to Defendant's interpretation.

For her proffered interpretation, Plaintiff focuses on the word "condition," arguing that the language "any . . . condition imposed by . . . any governmental or regulatory body . . .

binding upon [Defendant]" encompasses generally applicable statutes and regulations. (R. 50, Resp. at 6.) This is not a reasonable interpretation. To begin with, "condition" is not a word ordinarily used to refer to generally applicable statutes and regulations. *See Condition*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance."; "A stipulation or prerequisite in a contract, will, or other instrument[.]"). Ascribing Plaintiff's unusual meaning to the word "condition" would also improperly render the "binding upon" clause superfluous because generally applicable statutes and regulations are by definition "binding upon" all. *See Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 784 (Ill. App. Ct. 2005) ("[A] contract [should] be construed such that none of its terms are regarded as mere surplusage."). Put differently, for the terminal clause "binding upon [Defendant]" to have some meaning, "condition" must mean something more narrow than generally applicable laws and regulations. In addition, the phrase "condition imposed by" must be read in the context of the other types of legal constraints enumerated in § 11.2(f). *See Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 844 (N.D. Ill. 2009) ("[I]n order to properly understand the meaning of language there must be a discerning assessment of the context in which the words are used. . . . This is the familiar principle of *noscitur a sociis*[.]"). All of those other constraints—orders, judgments, injunctions, awards, and decrees, and agreements with or consents required by governmental or regulatory bodies—are the kind imposed specifically and individually on a particular party. Plaintiff's interpretation would imbue "condition" with a meaning qualitatively different from these other constraints. Section 11.2(f) is unambiguous and the Court concludes that it does not support Plaintiff's theory of breach. For this reason, Plaintiff has failed to state a claim in Count I for breach of contract.

Defendant's second argument as to Count I is that Plaintiff fails to adequately allege damages resulting from Defendant's purported breach, another necessary ingredient of a viable breach of contract claim. (R. 47, Mem. at 8.) As Defendant points out, Plaintiff's only allegation relating to damages is that "[a]s a result of the breach of [the Reinsurance Agreement], Plaintiff has suffered, and will suffer damages of a pecuniary nature." (*Id.* (quoting R. 37, First Am. Compl. ¶ 46).) Defendant argues that this allegation is inadequate because it is too conclusory, and that in any event it is not plausible that Triad was injured in any way by Defendant's alleged failure to disclose the reinsurance arrangement to borrowers.[8] (*Id.*) Plaintiff responds that her one-sentence allegation is sufficient and that "[w]hether [she] can *prove* the damages is not for the court [to] consider at this time." (R. 50, Resp. at 6-7 (emphasis added).)

The Court concludes that Plaintiff has not adequately alleged damages. To state a claim, Plaintiff must plausibly allege damages resulting from Defendant's alleged breach. *Hongbo Han*, 762 F.3d at 600. "Threadbare recitals of the elements of a cause of action," do not suffice. *Iqbal*, 556 U.S. at 678. The perfunctory allegation that Plaintiff "has suffered, and will suffer damages of a pecuniary nature" is exactly that: a threadbare recital of damages that is not adequate to state a claim. *See Directv, LLC v. Spina*, No. 1:15-cv-104, 2016 WL 3097212, at *5 (S.D. Ind. June 3, 2016) (dismissing breach of contract counterclaim for failure to adequately allege damages, describing as "vague" and "bare-bones" the allegation that defendant "was damaged by [the plaintiff's] breach"); *Royal Sleep Prods., Inc. v. Restonic Corp.*, No. 07 C 6588, 2010 WL 1172555, at *4, *7-9 (N.D. Ill. Mar. 22, 2010) (dismissing breach of contract claim where plaintiff alleged only that it "has suffered damages by reason of the breach," describing the allegations as "nothing but formulaic recitations of the elements of" a breach of contract claim

---

[8] The Court assumes that as Triad's rehabilitator, Plaintiff is alleging injury to Triad rather than herself.

and as "fail[ing] to allege any factual content that satisfies the *Twombly* standard"). This allegation has no factual content, let alone enough to infer that damages resulting from Defendant's alleged breach are "more than a sheer possibility"—a threshold that Plaintiff must meet. *Iqbal*, 556 U.S. at 678. Drawing reasonable inferences in Plaintiff's favor does not lend this allegation facial plausibility, as there is no obvious or apparent way—and Plaintiff does not articulate any in her response—that *Triad* would be harmed by Defendant's alleged failure to disclose the captive reinsurance arrangement to borrowers.[9] Plaintiff has not adequately alleged damages resulting from Defendant's alleged breach, and therefore fails to state a breach of contract claim for this additional reason.[10] Plaintiff's failure to state a claim does not appear curable as to both of the grounds for dismissal discussed above. However, out of an abundance of caution, the Court will give Plaintiff sixty days to propose any amended complaint that reasserts only Count I of this lawsuit.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

In Count II, Plaintiff asserts that Defendant breached the implied covenant of good faith and fair dealing by selectively referring only high-risk borrowers to Triad for PMI. (R. 37, First Am. Compl. ¶¶ 51-52.) Plaintiff alleges that Defendant vetted its borrowers and selectively referred only "the mortgages that presented the highest risk of default" to Triad, which allegedly enabled Defendant to minimize its risk of reinsuring loans that could go into default while at the

---

[9] If anything, Defendant's alleged breach would seem a boon to Triad. The disclosure that Defendant allegedly failed to provide to borrowers might—had it been given—have led some of them to procure mortgages elsewhere, which would mean fewer referred customers and thus lost business for Triad. In other words, the intuitive financial upshot of Defendant's alleged breach is to *help* rather than hurt Triad.

[10] Because the Court finds that Plaintiff fails to state a claim for breach of contract, it declines to address Defendant's alternative argument that Plaintiff "pleads herself out of court on Count I" by effectively alleging that the Reinsurance Agreement violates RESPA and is therefore unenforceable under Illinois law. (*See* R. 47, Mem. at 5-6.)

same time maximizing its profits. (*Id.* ¶¶ 11, 51-52.) Plaintiff alleges that Defendant's selective referral violated the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 49, 53.)

Defendant contends that Plaintiff's implied covenant claim must be dismissed for three reasons. First, Defendant argues that the implied covenant is inapplicable because there are no express terms in the Reinsurance Agreement relating to referred borrowers' credit quality and because the agreement does not contain any provisions requiring Triad to provide PMI to borrowers referred by Defendant. (R. 47, Mem. at 9-10.) The Court agrees with Defendant. Under Illinois law, "every contract implies good faith and fair dealing between the parties to it." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). The purpose of the implied covenant of good faith and fair dealing is "to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 823 (N.D. Ill. 2010) (citation omitted). However, it cannot be wielded as an "independent source of duties for the parties to a contract." *Beraha*, 956 F.2d at 1443. That is, it "cannot be used to create additional contractual terms." *Pharm. Horizons, Inc. v. SXC Health Sols., Inc.*, No. 11 C 6010, 2012 WL 1755169, at *3 (N.D. Ill. May 15, 2012); *see also Suburban Ins. Servs., Inc. v. Va. Sur. Co.*, 752 N.E.2d 15, 19 (Ill. App. Ct. 2001) ("The covenant of good faith and fair dealing does not allow a party to read an obligation into a contract that does not exist."). The implied covenant instead "guides the construction of *explicit terms* in an agreement." *Beraha*, 956 F.2d at 1443 (emphasis added). In other words, it is essentially "a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Resolution Tr. Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993).

To state a claim for breach of the implied covenant, Plaintiff must allege that the Reinsurance Agreement vested Defendant with discretion in performing an obligation and that Defendant exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties. *Shelbourne Dev. Grp.*, 732 F. Supp. 2d at 824; *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010). Plaintiff fails to state an claim for breach of the implied covenant because she does not allege or even argue that any express provisions of the Agreement vested Defendant with discretion to select the credit quality or risk profile of referred borrowers. *See Visco Fin. Servs., Ltd. v. Siegel*, No. 08 C 4029, 2008 WL 4900530, at *3 (N.D. Ill. Nov. 13, 2008) ("Since [defendant] failed to plead a discretionary right that [plaintiff] may have breached, he fails to state a cognizable claim under Illinois law."). Without any express provision that vested Defendant with discretion, there is no underlying contract language that the implied covenant can be tethered to or used to interpret. *See id.*; *Cook Inc. v. Bos. Sci. Corp.*, No. 01 C 9479, 2002 WL 335314, at *5 (N.D. Ill. Feb. 28, 2002) (explaining that Illinois does not recognize a "free-floating duty of good faith unattached to the underlying legal document" (citation omitted)).

Plaintiff also fails to state a claim because she has not alleged that Triad was required to accept referred borrowers or provide them PMI. For the implied covenant to apply, one party to the contract usually must be dependent on the other party exercising its contractually afforded discretion reasonably and in good faith. *See Peterson v. H & R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1211 (N.D. Ill. 1997); *Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203 (Ill. App. Ct. 1991) ("The dependant party must then rely on the party in control to exercise that discretion fairly." (citation omitted)). There is no such dependency here because it is undisputed by Plaintiff that nothing in the Agreement required Triad to provide PMI to any referred

borrowers. (*See* R. 47, Mem. at 9.) If instead Triad was contractually obligated to issue PMI to every referred borrower, then Triad might be dependent on Defendant fairly and reasonably exercising discretion over which borrowers to refer. But Plaintiff does not dispute that Triad had no such obligation under the Agreement. (*See id.*) If Triad was unhappy with what it perceived to be a selective referral of high-risk borrowers, it could simply have declined to issue them PMI. For this reason, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

Defendant's second argument is that Plaintiff's implied covenant claim is not facially plausible because it makes no economic sense. (R. 47, Mem. at 11-12.) The Court agrees with this argument as well. Selectively referring high-risk borrowers to Triad for PMI could serve only to *increase* Defendant's own exposure and potential liability, because—according to Plaintiff's own allegations—Defendant was reinsuring Triad's losses vis-à-vis those very same borrowers. (R. 37, First Am. Compl. ¶¶ 9-10.) Plaintiff's claim that the selective referral enabled Defendant to "minimize [its] risk of reinsuring loans that could go into default," thereby "maximizing profits," (*id.* ¶ 52), does not make economic sense. To minimize its reinsurance risk, Defendant would instead want to refer only *low*-risk borrowers to Triad—the lower the default rate among borrowers referred to Triad, the lower Triad's anticipated losses with respect to them and the less that Defendant might be on the hook for reinsuring. *See Illinois ex rel. Dowling v. AAMBG Reinsurance, Inc.*, No. 16 C 7477, 2017 WL 2378078, at *3 (N.D. Ill. June 1, 2017).

Plaintiff's only response to this argument is to point out that Defendant's reinsurance liability was capped. (R. 50, Resp. at 8.) Under the original Reinsurance Agreement,[11] for

---

[11] It appears that the Agreement was amended six times. (*See* R. 37-2 at 1.)

example, Defendant would only reinsure the first 10% of Triad's losses on policies issued in a given year; losses in excess of 10% for a given policy year would be borne by Triad. (R. 37-2 at 18, Reinsurance Agmt. § 3 ("[I]n no event shall Reinsurer be liable for . . . cumulative Net Losses . . . of ten percent (10%) or more[.]").) Plaintiff does not explain—and it is not self-evident—what significance this has for her implied covenant claim. She seems to suggest that the limits on Defendant's reinsurance liability make her claim economically plausible because once Triad's losses exceeded the reinsurance limits, Defendant's selective referral of high-risk borrowers would no longer increase its own liability. In other words, once the reinsurance limit was reached, Defendant could selectively refer risky borrowers to Triad with impunity. In that scenario, Plaintiff's claim might make economic sense because Defendant would no longer suffer adverse consequences from the selective referral. There are two problems with this theory, however.

First, Plaintiff does not allege that Triad's losses for any policy year *actually* exceeded the applicable reinsurance limit. In other words, she has not alleged that the situation where it could make economic sense for Defendant to engage in selective referral ever actually came about. Without such an allegation, Plaintiff's implied covenant claim is plausible only in a hypothetical scenario that she has not alleged ever occurred, and therefore presents only the "sheer possibility" that misconduct occurred. *Iqbal*, 556 U.S. at 678. Second, even if Plaintiff alleged that Triad's losses had exceeded the applicable reinsurance limits for some policy-years, the claim would still not make economic sense. Selectively referring high-risk borrowers could not work in Defendant's favor unless and until Triad's losses exceed 10%, because up until that point Defendant is reinsuring Triad's losses. But Defendant could not know *ex ante* which or how many referred borrowers would eventually default on their mortgages. Defendant thus could

not know for certain whether Triad's losses would ultimately remain below 10%—such that the selective referral would have been purely self-destructive—or would exceed 10%. To put it differently, Defendant could not know in advance what selectively referring risky borrowers would accomplish—whether it would be purely self-destructive, or whether it would harm Triad as well. Defendant had no apparent incentive to saddle itself with significant risk on the off chance that it could shift some of the risk back to Triad. *See AAMBG*, 2017 WL 2378078, at *3 (reaching similar conclusion that "[i]t does not make economic sense to argue that [Defendant] has an incentive to send poor risks to Triad"). Plaintiff's implied covenant claim is therefore implausible.

Defendant's third argument is that Plaintiff's implied covenant claim must be dismissed for one of the reasons applicable to her breach of contract claim in Count I: failure to plausibly allege damages resulting from the alleged breach. (R. 47, Mem. at 12.) Plaintiff does not respond to this argument, and the Court agrees with Defendant. A claim that a party breached the implied covenant of good faith and fair dealing is properly characterized as a breach of contract claim because "Illinois provides no independent cause of action for breach of the implied covenant."[12] *LSREF3 Sapphire Tr. 2014 v. Barkston Props., LLC*, No. 14 C 7968, 2016 WL 302150, at *2 (N.D. Ill. Jan. 25, 2016); *see also Lakeside Bldg. Maint., Inc. v. Raytheon Travel Air Co.*, No. 02 C 708, 2002 WL 31115584, at *2 (N.D. Ill. Sept. 23, 2002) ("[W]e will treat this [implied

---

[12] The Court notes that because Illinois law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, courts "regularly dismiss causes of action for breach of duty of good faith when they are not asserted *within* a breach of contract claim." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (collecting cases). Plaintiff appears to contend in her response that this claim is actually "within [her] breach of contract claim" and is "not a separate action." (R. 50, Resp. at 7.) Consequently, in the interest of efficiency, the Court will treat Plaintiff's implied covenant claim as part of her breach of contract claim. *See LSREF3 Sapphire Tr. 2014 v. Barkston Props., LLC*, No. 14 C 7968, 2016 WL 302150, at *2 (N.D. Ill. Jan. 25, 2016) ("[L]ooking beyond how the allegations are broken into separate counts that are captioned differently . . . it appears that defendants are not asserting an 'independent' breach of implied covenant claim. Rather, they are making one claim spread across Counts II and III[.]").

covenant] claim as essentially a breach of contract claim."). To state a claim for breach of contract, Plaintiff must allege damages resulting from the alleged breach. *Hongbo Han*, 762 F.3d at 600. As discussed above for Count I, Plaintiff has failed to plausibly allege damages because her only relevant allegation—that "[a]s a result of the breach of [the Reinsurance Agreement], Plaintiff has suffered, and will suffer damages of a pecuniary nature," (R. 37, First Am. Compl. ¶ 46)—is too conclusory to state a claim and is not otherwise plausible. For this additional reason, Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing.

While some of the grounds for dismissing Plaintiff's implied covenant claim may be curable, some are not. The absence of any contract provisions that vest Defendant with discretion or require Triad to issue PMI to referred borrowers is intrinsically fatal. So too is the economic implausibility of the claim. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will therefore be dismissed with prejudice.

## III.    Declaratory Judgment and Injunctive Relief Under RESPA (Count III)

In Count III, Plaintiff seeks a declaratory judgment that the reinsurance arrangement between Triad and Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. (R. 37, First Am. Compl. ¶¶ 55-62.) As noted, Plaintiff alleges that the ceded premiums were actually kickbacks and unearned fee-splitting paid in exchange for Defendant referring borrowers to Triad, which violated the prohibitions in 12 U.S.C. § 2607(a)-(b). (*Id.* ¶¶ 21, 24, 25, 32-36, 62.) Plaintiff also seeks a declaratory judgment that any further payment of dividends from the trust account to Defendant would violate RESPA and that the balance of the trust account is the property of Triad. (*Id.* ¶ 62.)

Defendant argues that the applicable statute of limitations bars Plaintiff's RESPA claim. (R. 47, Mem. at 12-13.) The Court agrees. "[I]f a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground."

*O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015). Plaintiff's claim in Count III is essentially that the reinsurance arrangement between Triad and Defendant violated RESPA, 12 U.S.C. § 2607(a)-(b). (R. 37, First Am. Compl. ¶¶ 21, 24-25, 32-36, 62.) The statute of limitations applicable to § 2607 is one year for private actions and three years for public enforcement actions brought by State insurance commissioners, both time periods beginning from "the date of the occurrence of the violation." 12 U.S.C. § 2614. Even assuming that the longer three-year limitations period applies because Plaintiff is the Acting Illinois Director Of Insurance,[13] Plaintiff's claim is several years too late. A cause of action under RESPA accrues, and the statute of limitations begins to run, at the closing of the underlying mortgage(s) in connection with which the violation occurred. *Thomas v. Ocwen Fed. Bank FSB*, No. 01 C 4249, 2002 WL 99737, at *2 (N.D. Ill. Jan. 25, 2002) (noting that "the closing of [the borrower's] loan" is "the day upon which claims under RESPA . . . typically accrue"); *see also Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003) ("The phrase 'the date of the occurrence of the violation' refers to the closing, i.e., when the [mortgagor] paid for the insurance[.]"); *Palmer v. Homecomings Fin. LLC*, 677 F. Supp. 2d 233, 237 (D.D.C. 2010) ("A cause of action under § 2607 accrues on the date of the closing."); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 325 (M.D.N.C. 2002) ("[T]he violation occurs and the limitations period begins once a borrower overpays for a settlement service that is subject to [a kickback] agreement."). Plaintiff does not

---

[13] Plaintiff contends that the three-year limitations period for actions by State insurance commissioners applies, (R. 50, Resp. at 9), but this is doubtful. As Defendant points out, she expressly brings suit in her capacity as Triad's "rehabilitator" under the Illinois Insurance Code, not in her public enforcement capacity. (R. 37, First Am. Compl. ¶¶ 1, 3.) Plaintiff's right of action is therefore derivative of whatever claims Triad had. *See* 215 ILL. COMP. STAT. 5/191 ("The Director [of Insurance] . . . shall be vested by operation of law with the title to all . . . rights of action of the company as of the date of the order directing rehabilitation or liquidation."). Had Triad itself brought the same RESPA claim that Plaintiff now brings, it is unquestionable that the one-year limitations period would apply. The Court sees no reason for a different outcome merely because the party stepping into Triad's shoes happens to be the Acting Director of Insurance. In any event, the Court need not definitively resolve which limitations period applies because Plaintiff's claim is barred even under the longer three-year period.

dispute that Triad stopped issuing PMI in 2008 and has been operating its business in "run-off"—meaning it administers existing policies and continues to process claims but no longer issues new policies—ever since.[14] (*See* R. 47, Mem. at 3, 12.) At the latest, then, a cause of action under RESPA accrued sometime in 2008, upon the closing of the last mortgage for which Triad issued PMI. *See AAMBG*, 2017 WL 2378078, at *4 (concluding similarly that "the last possible violation of RESPA occurred in 2008 when Triad issued the last of its PMI policies"). Plaintiff commenced this action in June 2016, approximately eight years later. (R. 1-1, Compl. at Law.) Plaintiff's claim is thus tardy by approximately five years, even under the longer limitations period.

Plaintiff offers two cursory arguments for why her RESPA claim is timely. Neither is persuasive. First, she argues that each payment of a ceded reinsurance premium by Triad to Defendant is a new RESPA violation that starts a new limitations period. (R. 50, Resp. at 9.) Plaintiff cites no authority to support this interpretation of RESPA's statute of limitations, which in any event has been repeatedly rejected by other courts. *See Snow*, 332 F.3d at 358-60 (rejecting argument that limitations period "began to run anew" each time defendant paid an alleged kickback); *Menichino v. Citibank, N.A.*, No. 12-0058, 2013 WL 3802451, at *12 (W.D. Pa. July 19, 2013) ("[T]he closing of the mortgage and continuous premium payments are more

---

[14] The Court takes judicial notice of statements in the Verified Complaint for Rehabilitation that Plaintiff filed in state court to initiate rehabilitation proceedings for Triad. *See Trs. of Local 734 Bakery Drives Health & Welfare Plan v. Wolff*, 537 F. Supp. 2d 951, 954 (N.D. Ill. 2008) ("[J]udicial notice will be taken of the state court pleadings . . . and other additional facts that plaintiff does not contend are disputed[.]"); *Brown v. Chrysler Fin. Servs.*, No. 05 C 1117, 2006 WL 850881, at *2 (N.D. Ill. Mar. 24, 2006) ("[A] court may take judicial notice of pleadings and orders in previous cases."), *aff'd*, 218 F. App'x 536 (7th Cir. 2007). In that Verified Complaint, Plaintiff averred under penalty of perjury that "Triad ceased issuing new commitments for [PMI] coverage in 2008 and has been operating its business in run-off" ever since. (R. 47 at 27-45, Mem. Ex. B., Verified Compl. ¶ 4.) The Court also notes that in the bankruptcy proceeding for Triad's corporate parent, the U.S. District Court for the District of Delaware noted to similar effect that "[a]lthough [Triad] is not writing new insurance policies, it continues to run off existing policies, which remain in force." *In re Triad Guar. Inc.*, No. 14-1464, 2016 WL 3523834, at *2 (D. Del. June 27, 2016).

properly conceived of as a single violation followed by continuing consequences, where the closing of the mortgage is the single actionable violation and the recurring payments . . . are the continuing ill effects." (citation and internal quotation marks omitted)); *Mullinax*, 199 F. Supp. 2d at 325 (rejecting argument that a new RESPA violation with a new limitations period "occurs upon each monthly payment for primary mortgage insurance premiums . . . for each payment relates to the illegal kickback agreements"); *AAMBG*, 2017 WL 2378078, at *4 (rejecting argument that "each distribution to [the reinsurer] from . . . Triad . . . constitutes a separate violation" of RESPA).

This Court likewise rejects Plaintiff's interpretation. "The primary ill that § 2607 is designed to remedy is the potential for unnecessarily high settlement charges . . . caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the [borrower] pays for the service, typically at the closing." *Snow*, 332 F.3d at 359-60 (citation and internal quotation marks omitted). An aggrieved party "could have sued at that moment, and the standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action." *Id.* (citation and internal quotation marks omitted). A significant problem with Plaintiff's interpretation is that it would "let the statute of limitations regenerate itself like a phoenix from the ashes" because the limitations period would "begin at the closing and expire a year later, only to be restarted years later" if another payment that is alleged to be a kickback is made—even if the corresponding mortgage transaction settled years or even decades ago. *Id.* at 360. Plaintiff's interpretation would also inappropriately "encourage tardy plaintiffs to sue and hope that discovery turns up a recent [alleged kickback] payment that restarts the limitations period." *Id.* at 361. The Court therefore rejects Plaintiff's interpretation of Section 2614.

Plaintiff's second argument is that RESPA's statute of limitations is subject to equitable tolling. (R. 50, Resp. at 9.) Equitable tolling applies "when the plaintiff, exercising due diligence, was unable to discover evidence vital to a claim until after the statute of limitations expired." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 931 (7th Cir. 2015) (citation omitted). It is "granted sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Id.* at 930 (citation omitted). It is true that in this Circuit, the limitations period under RESPA can be equitably tolled because it is considered non-jurisdictional. *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir. 1997); *Horton v. Country Mortg. Servs., Inc.*, No. 07 C 6530, 2008 WL 2952276, at *2 (N.D. Ill. July 30, 2008) ("RESPA actions are subject to . . . the doctrine of equitable tolling[.]"); *but see Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1038-41 (D.C. Cir. 1986) (holding that time limitation in 12 U.S.C. § 2614 is jurisdictional and therefore not subject to equitable tolling). But Plaintiff "bears the burden of demonstrating that equitable tolling applies." *Bolden v. Wells Fargo Bank, N.A.*, No. 14 C 403, 2014 WL 6461690, at *5 (N.D. Ill. Nov. 18, 2014); *Thomas*, 2002 WL 99737, at *3 ("[W]here, as here, the expiration of the statute of limitations is clear from the face of the complaint, the plaintiff must plead in the complaint any exceptions[.]").

Plaintiff's one-sentence argument does not explain why equitable tolling would apply, and the complaint contains no allegations from which that can be reasonably inferred. Indeed, the only reasonable inference from Plaintiff's allegations is rather that equitable tolling would *not* apply. According to Plaintiff's allegations, Triad itself participated in the alleged kickback scheme. Therefore, evidence to support a claim that the ceded reinsurance premiums were in fact kickbacks would be in its possession from the outset. And Plaintiff has been Triad's appointed

rehabilitator since 2012, meaning that—by operation of law—she has had access to and should have had possession of all of Triad's records since then. *See* 215 Ill. Comp. Stat. 5/191 ("The Director is entitled to immediate possession and control of all property . . . of the company, and is further authorized and directed to remove any and all records and property of the company to the Director's possession and control[.]"). Plaintiff offers no reason that Triad or Plaintiff would be unable to discover evidence vital to the RESPA claim until after the statute of limitations expired. And even if equitable tolling applied, Plaintiff has not established that it paused the limitations period long enough to render her claim timely, which in this case would be almost five years. *See Sidney Hillman Health Ctr.*, 782 F.3d at 931 ("[A] plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." (citation omitted)). Equitable tolling does not save Plaintiff's untimely RESPA claim. *See AAMBG*, 2017 WL 2378078, at *3 (dismissing Plaintiff's RESPA claim as barred by the statute of limitations). The Court therefore dismisses this claim (Count III) with prejudice.[15]

## IV.    Unjust Enrichment (Count IV)

In Count IV, Plaintiff asserts a claim of unjust enrichment, alleging that the reinsurance premiums paid by Triad "grossly exceeded" the value of any reinsurance provided by Defendant. (R. 37, First Am. Compl. ¶ 64.) On this basis, Plaintiff alleges that Defendant's retention of the approximately $1.7 million remaining in the trust account, which represents the ceded reinsurance premiums, constitutes unjust enrichment. (*Id.* ¶ 66.)

---

[15] Because Plaintiff's RESPA claim is barred by the statute of limitations, the Court need not address Defendant's alternative argument that the conduct alleged does not actually violate RESPA. (*See* R. 47, Mem. at 13-14.)

Defendant argues that Count IV must be dismissed because unjust enrichment is not available where there is an express contract that governs the relationship between the parties, and according to Plaintiff's own allegations a written contract—the Reinsurance Agreement— governs the relationship between Triad and Defendant. (R. 47, Mem. at 14-15.) Plaintiff concedes that the existence of a contract usually precludes an unjust enrichment claim, but responds that (1) her unjust enrichment claim falls outside the subject matter of the Reinsurance Agreement; and (2) she permissibly pleads unjust enrichment in the alternative to breach of contract. (R. 50, Resp at 10-11.) The Court rejects both of Plaintiff's arguments.

Illinois law does not allow a claim of unjust enrichment where there is a contract that governs the relationship between the parties, unless the claim falls outside the subject matter of the contractual relationship. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). This rule prevents a contracting party from making an "end run around contract law by pursuing an unjust enrichment theory." *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010); *see also Prodromos v. Poulos*, 560 N.E.2d 942, 948 (Ill. App. Ct. 1990) ("This rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations."). The gravamen of Plaintiff's claim in Count IV is that the reinsurance premiums paid by Triad "grossly exceeded" the value of the reinsurance provided by Defendant and that Defendant's retention of the allegedly excessive premiums constitutes unjust enrichment. (R. 37, First Am. Compl. ¶¶ 64-65.) Yet Plaintiff herself expressly alleges a written contract—the Reinsurance Agreement—that governs the

reinsurance relationship between Defendant and Triad.[16] (*Id.* ¶¶ 8-9, 12, 20, 30.) Illinois law thus precludes Plaintiff's unjust enrichment claim. *See Horace Mann*, 383 F.3d at 688-89.

Plaintiff nevertheless attempts to reframe her unjust enrichment claim as dealing with who may retain the balance of the trust account (into which the ceded premiums were deposited) and contends that this issue "potentially" falls outside of, or is not addressed by, the Agreement. (R. 50, Resp. at 10-11.) This argument is not persuasive. "In determining whether a claim falls outside a contract, the *subject matter* of the contract governs, not whether the contract contains terms or provisions related to the claim." *Horace Mann*, 383 F.3d at 689 (emphasis added). Illinois courts construe the "subject matter" of a contract broadly for purposes of this inquiry. *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015), *aff'd in part*, 830 F.3d 735 (7th Cir. 2016). It thus does not matter whether the Reinsurance Agreement has provisions specifically dealing with payments out of the trust account.[17] *See Horace Mann*, 383 F.3d at 689 ("[Plaintiff] is correct that its contract with [defendant] contains no terms or provisions dealing specifically with soliciting cheaper proposals for telephone service. But despite the absence of specific terms, the subject matter of the contract clearly encompasses the work [plaintiff] did for [defendant] identifying sources of savings including potential 'future savings.'"); *Stevens*, 2015 WL 791384, at *17 (finding unjust enrichment claim precluded by an express contract, even though contract "does not deal with the specific subject at issue" in the claim). Instead, it is enough if the unjust enrichment claim arises out of the subject matter—broadly construed—of the contractual relationship between Defendant

---

[16] Indeed, as previously noted, Plaintiff attached a copy of the Agreement to her complaint. (R. 37-2.)

[17] The Court notes that, in any event, Plaintiff herself alleges that the Reinsurance Agreement has such provisions; she alleges that it provides for "the payment of dividends from the Trust Account to Twin Rivers . . . and its affiliated Approved Originator[s]." (R. 37, First Am. Compl. ¶ 62.)

and Triad. *See Stevens*, 2015 WL 791384, at *17; *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2017 WL 1105400, at *13 (N.D. Ill. Mar. 24, 2017) ("[T]he contract's existence precludes an unjust enrichment claim . . . as long as the contract generally governs the parties' business relationship."). Plaintiff's unjust enrichment claim clearly does arise out of the subject matter of the Reinsurance Agreement, and the Court rejects Plaintiff's argument to the contrary.

Plaintiff also argues that she permissibly pleads unjust enrichment in the alternative to her breach of contract claim. (R. 50, Resp. at 10-11.) Plaintiff insists that because she has "questioned" the enforceability of the Reinsurance Agreement, she may maintain her unjust enrichment claim "[u]ntil it can be determined that the parties agree the Agreement is valid and enforceable." (*Id.* at 11.) In essence, Plaintiff argues that her unjust enrichment claim may proceed as an alternative to her breach of contract claim—*i.e.*, under a theory that the Reinsurance Agreement is unlawful and therefore unenforceable. A litigant may plead unjust enrichment in the alternative to breach of contract if (1) it makes clear through appropriate language that the claim is actually pled in the alternative and (2) the claim does not refer to, or incorporate allegations of, an express contract governing the parties' relationship. *Grayson v. Shanahan*, No. 16-CV-1297, 2016 WL 6962827, at *3 (N.D. Ill. Nov. 29, 2016); *Roche v. Liberty Mut. Managed Care, Inc.*, No. 07-cv-331, 2008 WL 4378432, at *3 (S.D. Ill. Sept. 23, 2008). Plaintiff's unjust enrichment claim fails on both counts. "While [plaintiffs] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing," such as either-or or if-then language. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Thus, a litigant wanting to plead unjust enrichment in the alternative to breach of contract may plead as follows: "(1) there is an express

contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).

Plaintiff's unjust enrichment claim does not use any language that indicates alternative pleading, and thus fails to properly plead in the alternative. The claim also improperly incorporates by reference Plaintiff's express allegations of a written contract governing the relationship between Triad and Defendant. (*See* R. 37, First Am. Compl. ¶ 63 ("restat[ing] and realleg[ing]" paragraphs 1-37); *id.* ¶ 8 ("At all relevant times hereto, Triad and Twin Rivers were parties to the [Reinsurance Agreement]."); *id.* ¶ 9 ("Pursuant to the [Reinsurance] Agreement, Twin Rivers was a reinsurer for mortgage insurance policies that Triad issued on a loan originated by an Affiliated Bank."); *id.* ¶ 30 ("The[] referrals of mortgage insurance business were made pursuant to the Agreements between Triad and Twin Rivers which provided that Triad would cede a portion of their mortgage insurance premiums to the referring Approved Lender's affiliated reinsurer.").) Referencing, or incorporating allegations of, an express contract governing the parties' relationship has been "the downfall of complaints" in many other cases. *Inteliquent, Inc. v. Free Conferencing Corp.*, No. 16-cv-6976, 2017 WL 1196957, at *18 (N.D. Ill. Mar. 30, 2017) (citation omitted) (collecting cases). So it is here. Not only does Plaintiff fail to use language that properly pleads in the alternative, she improperly incorporates allegations of an express contract governing the relationship between Defendant and Triad. Plaintiff has thus failed to plead unjust enrichment in the alternative to her breach of contract claim.

Defendant argues further that even if Plaintiff cured her pleading missteps and properly pled an unjust enrichment claim in the alternative, the claim must still be dismissed because Illinois law does not permit parties to an unlawful contract to seek relief via unjust enrichment.

(R. 52, Reply at 10.) Defendant reasons that even if the Reinsurance Agreement is unlawful under RESPA and therefore unenforceable—the alternative theory on which Plaintiff would base her unjust enrichment claim—Illinois law would still preclude the claim. (*Id.*) The Court agrees. "Illinois law does not allow a claim for unjust enrichment when the underlying contract has been held to be void as against public policy." *Liautaud v. Liautaud*, 221 F.3d 981, 989 (7th Cir. 2000); *see also Ctr. for Athletic Med., Ltd. v. Indep. Med. Billers of Ill., Inc.*, 889 N.E.2d 750, 759 (Ill. App. Ct. 2008) ("[P]laintiff is unable to sue . . . for unjust enrichment where there was a contract between the parties, although the contract is void as a matter of law.").[18] This is because "parties to a void contract will be left where they have placed themselves with no recovery of the money paid for illegal services." *Gamboa*, 941 N.E.2d at 1017 (citation omitted); *see also Ohio Nat'l Life Assurance Corp. v. Davis*, 803 F.3d 904, 911 (7th Cir. 2015) (quoting *Gamboa*). Thus, even if Plaintiff properly pled her unjust enrichment claim based on an alternative theory that the Reinsurance Agreement is unlawful and therefore unenforceable, Illinois law would preclude the claim. *See Liautaud*, 221 F.3d at 989; *ABC & S, Inc. v. MacFarlane Grp., Inc.*, No. 13 C 07480, 2015 WL 300483, at *4 (N.D. Ill. Jan. 22, 2015) (denying motion to amend in order to plead unjust enrichment as alternative to breach of contract for the same reason). Because Plaintiff is

---

[18] There is a recognized exception to this rule where "(1) the person who paid for the services was not *in pari delicto* [equally at fault] . . . with the offender and (2) the law in question was passed for the protection of the person who paid for the services and the purpose of the law would be better served by granting relief than by denying it." *Gamboa*, 941 N.E.2d at 1017; *see also Ohio Nat'l*, 803 F.3d at 911 (invoking exception and granting restitution for unjust enrichment). If this exception applies, Plaintiff might be able to pursue a claim of unjust enrichment under an alternative theory that the Reinsurance Agreement is unlawful under RESPA. However, Plaintiff does not argue that this exception applies. Nor has she alleged that Triad was blameless in the alleged kickback scheme. To the contrary, she has alleged that Triad was a willing participant: she alleges that "Triad's reinsurance premiums and dividends . . . ceded to Twin Rivers were . . . paid in exchange for referring customers" and that "[e]ach . . . ceding payment and dividend payment . . . by Triad was made in consideration of [Twin Rivers'] . . . continued referral of mortgage insurance business to Triad." (R. 37, First Am. Compl. ¶ 21, 33.)

unable to pursue unjust enrichment even if she properly pled this claim in the alternative, the claim will be dismissed with prejudice.[19]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 46) is GRANTED. Count I is dismissed without prejudice, and Counts II, III, and IV are dismissed with prejudice. The parties are also requested to fully exhaust all settlement possibilities for this lawsuit in light of this opinion.

**ENTERED:** _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 5, 2017**

---

[19] Because the Court concludes that Plaintiff fails to state an unjust enrichment claim, it need not address Defendant's additional argument, (*see* R. 47, Mem. at 15), that the claim is barred at least in part, if not entirely, by the five-year statute of limitations set forth in 735 ILL. COMP. STAT. 5/13-205. *See Zelman v. Hinsdale Twp. High Sch. Dist. 86*, No. 10 C 00154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) ("Since [plaintiff] has failed to state a claim . . . this Court need not reach the question of whether the claim is barred by the statute of limitations.").